[Civ. No. 65951. Second Dist., Div. Six. June 23, 1983.]

CITY OF CAMARILLO, Plaintiff and Respondent, v.
SPADYS DISPOSAL SERVICE, Defendant and Appellant.

**COUNSEL**

Robert E. Brimberry, Brimberry & Wayland and Edward A. Nugent for Defendant and Appellant.

Royal M. Sorensen and Colin Lennard, City Attorneys, Burke, Williams & Sorensen and Peter M. Thorson for Plaintiff and Respondent.

Turner & Sullivan, Richard K. Turner and Harry Astor as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

**STONE, P. J.**—This is an appeal from a judgment granting a preliminary injunction against the appellant enjoining it from hauling waste in the City of Camarillo.

### Facts

The city manager for the City of Camarillo (hereinafter referred to as City) refused to renew the appellant's solid waste hauling permit which expired December 31, 1981. The City refused to renew the appellant's permit because it had concluded that Camarillo could not support more than one disposal company. Furthermore, the city council found that Camarillo would be adversely affected by the granting of an additional contract or permit for rubbish collection. The appellant continued to haul garbage within the city limits after its permit to do so had expired. The respondent filed a motion for preliminary injunction which was granted.

### Analysis

■ The sole issue raised on appeal is whether or not the City's act of refusing to grant waste-hauling permits to more than one company is violative of the "Sherman Antitrust Act" (15 U.S.C. § 1). ■ States and municipalities are treated differently under the Sherman Act than nongovernmental persons and entities. While the language of 15 United States Code section 1 prohibits "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . .," it is well accepted that states and municipalities may engage in monopolistic practice when acting for the benefit of the public.

The policy of permitting monopoly for the public benefit was first articulated in *Parker* v. *Brown* (1943) 317 U.S. 341 [87 L.Ed. 315, 63 S.Ct. 307]. Speaking for the Supreme Court, Chief Justice Stone stated that local governmental restraint of trade was to be condoned when ". . . upon a consideration of all relevant facts and circumstances it appears that the matter is one which may appropriately be regulated in the interest of the safety, health and well-being of local communities, and which, because of its local

character and the practical difficulties involved, may never be adequately dealt with by Congress." (*Id.* at p. 362 [87 L.Ed. at p. 332].) The regulation of garbage collection in small communities is classically the category of trade restraint to which the *Parker* v. *Brown* exception was intended to be applied.

 The appellant points out that local government does not possess unlimited power to restrain trade under a general public well-being theory. To support its proposition the appellant cites *Lafayette* v. *Louisiana Power & Light Co.* (1978) 435 U.S. 389 [55 L.Ed.2d 364, 98 S.Ct. 1123]. In *Lafayette* the Supreme Court stated: "Plainly petitioners are in error in arguing that *Parker* held that all governmental entities, whether state agencies or subdivisions of a State, are, simply by reason of their status as such, exempt from anti-trust laws." (*Id.,* at p. 408 [55 L.Ed.2d at p. 380].) The court then went on to formulate a two-pronged test to determine if state action may be properly excluded from the Sherman Antitrust Act. The first level of the test requires an analysis of whether or not the restraint on trade imposed is, "one clearly articulated and affirmatively expressed as state policy." (P. 410 [55 L.Ed.2d p. 381].) The second level of the test then focuses on the question of whether or not the policy is, "actively supervised by the [state itself]." (*Ibid.*)

We shall now apply the *Lafayette* test to the case at bar. There can be no doubt that Camarillo's decision to restrict the issuance of waste disposal permits falls within the clearly articulated and affirmatively expressed policy of the state. This policy can readily be perceived by examining several Government and Health and Safety Code provisions.

The Legislature expressed its conviction that garbage collection is clearly in the best interest of the public by enacting Government Code section 66701. That code section states in pertinent part: "The Legislature finds and declares as follows: (a) The increasing volume and variety of solid wastes being generated throughout the state, coupled with the often inadequate existing methods of managing such wastes, are creating conditions which threaten the public health, safety, and well-being by contributing to air, water, and land pollution, to the production of flies, rodents, and litter, to the waste of dwindling natural resources, and to the general deterioration of the environment."

In addition to acknowledging the public interest in refuse collection, the Legislature empowered local communities to take appropriate steps to maintain community sanitation by enacting Health and Safety Code section 4250. That code section states: "The legislative body of any incorporated city *may* contract for the collection or disposal, or both, of garbage, waste, refuse,

rubbish, offal, trimmings, or other refuse matter under such terms and conditions as may be prescribed by the legislative body of any such city by resolution or ordinance." (Italics added.)

The appellant argues that the language of Health and Safety Code section 4250 is permissive rather than mandatory. That is to say, the inclusion of the word "may" simply allows municipalities to enter into contracts. The appellant points out that the statute does not require such action. Furthermore, the appellant asserts that even if the statute required that cities contract to remove their garbage, the code section nowhere implies that such contract be with only one refuse collector. The appellant contends that the state does not expressly require monopolies for local waste collection. Therefore, in the absence of such a requirement, the appellant asserts that the free trade intent of the Sherman Antitrust Act must control. Carrying the appellant's argument to its logical conclusion, the City of Camarillo would of necessity have violated 15 United States Code section 1 by prohibiting the appellant from collecting refuse within the city limits.

While the appellant's argument has a certain persuasive appeal within its limited context, an analysis of the entire legislative scheme compels the conclusion that Camarillo's restraint of trade is lawful. The Legislature in enacting laws for California must draft its statutes in such a way as to allow individual communities the flexibility to adapt statewide directives to local circumstances. The Legislature clearly kept this consideration in mind when it drafted Government Code section 66757, subdivision (b) "Notwithstanding any other provision of law, each county, city and county, city, special district, or other local governmental agency may determine all of the following: . . . (b) Whether such services are to be provided by means of nonexclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding, or, if in the opinion of its governing body, the public health, safety and well-being so require, by partially exclusive or wholly exclusive franchise, contract, license, permit, or otherwise, either with or without competitive bidding. Such authority to provide solid waste handling services may be granted under such terms and conditions as are prescribed by the governing body of the local governmental agency by resolution or ordinance."

It would have been irresponsible for the state to dictate the exact manner of refuse collection required without allowing for the unique circumstances of individual communities. The Legislature recognized the folly of such a position and empowered local governments to adopt refuse regulations which would best serve the local public interest.

Returning to the first prong of the *Lafayette* test, it can be seen that the Legislature did not specifically require that cities create monopolies in or-

ganizing refuse collection. Nevertheless, the state clearly intended that such a system be permitted if the local governmental entity found that an exclusive contract was in the public interest. The state's policy in this area is "clearly articulated and affirmatively expressed."

The second prong of the *Lafayette* test requires that the restrictive trade policy be "actively supervised by the state itself." In the case at bar the Legislature has specifically empowered local government to regulate the details of refuse collection in the community (Health & Saf. Code, § 4250 and Gov. Code, §§ 66701, 66757, 66757, subds. (a) and (b)). The statutory language of these code sections must be viewed as a delegation of authority rather than an abdication of responsibility.

The respondent, City of Camarillo, has restricted the refuse collection industry within its city limits. This trade restraint is lawful and has been enacted to serve the public's best interest as perceived by the local governmental entity charged with the responsibility of maintaining community sanitation.

Accordingly, the superior court judgment is affirmed.

Abbe, J., and Gilbert, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 21, 1983.